**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Alfredo Rabi-Barrueto,

Petitioner,

v.

David R. Rivas, et al.,

Respondents.

No. CV 26-01708 PHX DWL (CDB)

**REPORT AND RECOMMENDATION**
**A 213 259 463**

Petitioner file his § 2241 petition on March 12, 2026, while detained at the San Luis Regional Detention Center. The petition is now fully briefed and ready for the Court's review.

## I. Background

Petitioner is a native and citizen of Cuba. (ECF No. 19-3 at 14, 61; ECF No. 19-12 at 16). Petitioner previously came into the United States in 2019, and he filed an application for asylum (I-589). That application for asylum was denied and Petitioner was ordered removed from the United States on February 12, 2020. (ECF No. 19-6 at 6; ECF No. 19-8 at 16; ECF No. 19-25 at 14-23). Petitioner returned to the United States in January of 2021, and was released on bond. (ECF No. 19-11 at 37; ECF No. 19-12 at 21). On or about March 8, 2024 Petitioner's wife, a lawful permanent resident, filed an I-130, Petition for Alien Relative. (ECF No. 19-12 at 70). Petitioner allows he was deported in June of 2024. (ECF No. 19-11 at 37; ECF No. 19-12 at 21).

With regard to the instant petition, on December 30, 2024, Petitioner sought entry and asylum at the San Ysidro port of entry; Petitioner alleges he made an appointment to be inspected through the CBP One process. (ECF No. 19-12 at 20). Petitioner was

detained. Petitioner stated a credible fear of being returned to Cuba, asserting he would be "politically persecuted" if returned to Cuba (ECF No. 19-12 at 19-22; 41-44), and was placed in regular removal proceedings pursuant § 240 of the Immigration and Nationality Act ("INA") by means of a Notice to Appear ("NTA") issued January 14, 2024. (ECF No. 19-12 at 13, 35). The NTA charged Petitioner as removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") as an immigrant who, at the time of application for admission, was not in possession of a valid unexpired immigrant visa or other valid entry document, and a valid or unexpired passport or other suitable travel document. (*Id.*). Petitioner was detained as an arriving alien, pursuant to 8 U.S.C. § 1225(b).

Petitioner sought a custody determination hearing on January 20, 2025, but withdrew that request on or about January 31, 2025. (ECF No. 19-12 at 28).

At a master calendar hearing on March 4, 2025, Petitioner, through counsel, admitted the allegations stated in the NTA and an Immigration Judge ("IJ") designated Cuba as the country for removal. (ECF No. 19-35 at 77-82).

Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal, on April 3, 2025. (ECF No. 19-35 at 105). On April 8, 2025, the government filed a request to designate Mexico as an alternate country of removal. (ECF No. 19-11 at 8; ECF No. 19-25 at 85-86). On June 5, 2025, an IJ declined to designate Mexico as the country of removal. (ECF No. 19-35 at 94).

In July of 2025 the United States concluded Asylum Cooperative Agreements between the United States and Uganda and the United States and Ecuador.[1] The notices were published in the Federal Register in September and November of 2025, respectively. *See* 90 Fed. Reg. 42597-01 (Uganda); 90 Fed. Reg. 51376 (Ecuador).

---

[1] Congress established a "safe third country" exception to the right to apply for asylum by enacting 8 U.S.C. § 1158(a)(2)(A). This section provides that a noncitizen may be removed, pursuant to a multilateral or bilateral agreement (such as an Asylum Cooperative Agreement), to a country in which their life or freedom would not be threatened on account of a protected ground, and where they would have access to a full and fair procedure for determining a claim to asylum or equivalent protection.

At a hearing conducted October 30, 2025, an IJ noted Cuba was the only designated country of removal, because an IJ had previously denied Mexico as country of removal and the government had declined to name alternate country. (ECF No. 19-35 at 103). At that time Petitioner's application for asylum and withholding of removal was still pending. (ECF No. 19-35 at 105).

At some point subsequent to October 30, 2025, the Department of Homeland Security designated Ecuador and Uganda as third-party countries of removal, pursuant to the Asylum Cooperative Agreements between the United States and these countries. (ECF No. 19-35 at 117).

On December 16, 2025, the Department of Homeland Security filed a motion in the Immigration Court to pretermit Petitioner's application for relief from removal, i.e., the application for asylum filed April 3, 2025. (ECF No. 22-1 at 28, 45-51). Petitioner, through counsel, asserted the motion should be denied. (ECF No. 22-1 at 27-42; ECF No. 19-35 at 117-18). In opposition to the motion to pretermit counsel noted Petitioner had appeared at "least six (6) Master Calendar Hearings since the ACAs were signed and the DHS did not raise any ACAs until after the deadline for filings occurred on November 10, 2025." (ECF No. 22-1 at 30). Petitioner argued: "DHS waived its ability to raise the issue of pretermission under the ACA, and now prejudices Respondent by raising this issue for the first time before their Individual Hearing [on the application for asylum] on Dec. 17, 2025." (ECF No. 22-1 at 30). Petitioner, through counsel, argued that because the conclusion and publication of the ACAs in the Federal Register occurred subsequent to his application for admission at the border on December 30, 2024, and subsequent to the filing of his application for asylum, "the retroactive application of the ACA violates due process." (ECF No. 22-1 at 28. *See also* ECF No. 19-1 at 30). Petitioner further argued that DHS had "not met its burden of showing that any of the two ACA countries named is actually capable of receiving Respondent and affording a 'full and fair procedure' for seeking asylum or equivalent protection," and that "credible

evidence" established that neither Uganda nor Ecuador was "safe" and therefore "their designation as 'safe third countries'" was invalid. (ECF No. 22-1 at 28).

A hearing was conducted on the motion to pretermit on January 15, 2026 (ECF No. 19-35 at 57-131). At that time the government moved to amend the motion to withdraw Uganda as a country of removal, which motion was granted. (ECF No. 19-35 at 60).

In an order entered January 15, 2026, an IJ granted the government's motion to pretermit Petitioner's application for asylum and withholding of removal. (ECF No. 19-13 at 8-11). The IJ found Petitioner was barred from applying for asylum under INA § 208(a)(2)(A) (codified at 8 U.S.C. § 1158(a)(2)(A), i.e., the "safe third country" bar). (ECF No. 19-13 at 8-10). The IJ also found the bar precluded withholding of removal. (ECF No. 19-13 at 8). The IJ noted, with regard to removal to Ecuador pursuant to the Asylum Cooperative Agreement, that Petitioner had the burden to prove by a preponderance of the evidence that the statutory bar to asylum did not apply because he would "more likely than not be persecuted or tortured in that country." (ECF No. 19-13 at 9). The IJ found and concluded that "DHS has provided reasonable notice … of its intent to effectuate removal to Ecuador under the agreement," and that Petitioner had filed a written response to the motion to pretermit and a hearing was conducted on the motion. (*Id.*). The IJ further found and concluded Petitioner had failed to prove by a preponderance of the evidence that he would more likely than not be persecuted on account of a protected ground, or tortured, in Ecuador. (ECF No. 19-13 at 10). Accordingly, the IJ granted the motion to pretermit, denied Petitioner's application for asylum and withholding of removal, and ordered Petitioner be removed to Ecuador. (ECF No. 19-13 at 11).

Petitioner appealed the IJ's decision to the BIA on February 13, 2026. (ECF No. 19-1 at 4, 13; ECF No. 19-12 at 75).[2] As of August 24, 2026, the Executive Office of

---

[2] Alfredo Jesus RABI-BARRUETO (A 213-259-463) appeals the Immigration Judge's (IJ) finding that he is subject to the Asylum Cooperative Agreement (ACA) with Ecuador, resulting in the Pretermition of his applications for relief

Immigration and Customs Enforcement's case information website states "No case information is available" with regard to Petitioner's appeal, or whether a briefing schedule has been issued in the appeal.

On July 31, 2026, Petitioner filed a motion in the instant case seeking his release from custody pending the finality of his removal proceedings, averring his appeal of the order of removal is ongoing, and that he is not a flight risk nor a danger to the community, and that he will abide by whatever conditions of release are imposed. (ECF No. 24).

Petitioner has been in immigration custody for 19 months, and he has no criminal history in the United States. (ECF No. 19-3 at 93). There is no indication in the record that Petitioner has been given a bond hearing.

**II. Claims for Relief**

Petitioner, who proceeds pro se and whose petition is submitted on a form petition, contends his continued detention is in violation of the Supreme Court's holding in *Zadvydas v. Davis*. (ECF No. 1). Petitioner also asserts his continued detention is "in violation of the Due Process Clause of the Fifth Amendment …" (ECF No. 1 at 5).

Respondents assert that relief must be denied because Petitioner is not yet under a final order of removal and therefore he is not entitled to relief pursuant to *Zadvydas*. Respondents do not address Petitioner's due process claim.

**III. Analysis**

As Respondents argue, Petitioner's order of removal is not final and, accordingly, his detention is not governed by the doctrine of *Zadvydas*.

---

> before the court. This finding erroneously disregarded various sections of the Immigration Court Practice Manual (ICPM) under Rule§ 3.1 for timely filing. The court also improperly relied on *Matter of C-G-M- & L-V-S-G-*, 29 l&N Dec. 291 (BIA 2025), given that the government failed to establish that Ecuador is actually capable of receiving Respondent and affording him a "full and fair procedure" for seeking asylum or equivalent protection. The court failed to recognize that there is credible evidence showing Ecuador [is] not safe and thus, the designation of Ecuador as a "safe third country" is invalid.

(ECF No. 19-1 at 14).

With regard to Petitioner's due process claim, although 8 U.S.C. § 1225(b), the statute under which Petitioner is detained, provides that a noncitizen who is not under a final order of removal "shall" be detained pending the conclusion of their removal proceedings, the Ninth Circuit Court of Appeals has recognized that prolonged civil immigration detention without meaningful individualized safeguards raises serious constitutional concerns and warrants relief when detention becomes unreasonable as applied to a particular individual. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1142-44 (9th Cir. 2013); *Tijani v. Willis*, 430 F.3d 1241, 1247-49 (9th Cir. 2005). The Seventh Circuit Court of Appeals also recently opined that prolonged detention under § 1225(b) implicates a violation of the detainee's right to due process. *Cf. Cirrus Rojas v. Olson*, ___ F. 4th ___, 2026 WL 2198315, at *16-17 (7th Cir. July 30, 2026) (finding the petitioner was detained under 8 U.S.C. § 1226 but also finding that prolonged detention under § 1225(b), the statute under which the government had asserted the petitioner was detained, "threatens due process."). Similar to the petitioner in *Cirrus Rojas*, Petitioner has previously been released from detention pending the finality of removal proceedings upon a finding that they were not a flight risk nor a danger to the community. It is also noted that during his residency in the United States from January of 2021 through June of 2024, Petitioner did not commit any crimes and he appeared for his removal proceedings and acquiesced to removal when the order became final.

A majority of the federal district courts that have considered the question have concluded that at some point prolonged detention under § 1225(b), without an individualized bond hearing, violates the detainee's right to due process. *See*, *e.g.*, *Leonteva v. Noem*, ___ F. Supp. 3d ___, No. 26-cv-00043, 2026 WL 711766, at *5 (S.D. Ind. Mar. 13, 2026); *Rash v. LaRose*, 823 F. Supp. 3d 1174, 1179 (S.D. Cal. 2026); *Larrazabal-Gonzalez v. Mason*, 818 F. Supp. 3d 794, 801 (S.D.W. Va. 2026) ("The Constitution does not tolerate what would be plainly unlawful in the criminal context simply because the detention is labeled civil. Nor does the Constitution withhold its protections when a person is an immigrant."); *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090,

1093 (S.D. Cal. 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Fils-Aime v. FCI Berlin, Warden*, 808 F. Supp. 3d 218, 224 (D.N.H. 2025); *Rashid v. Trump*, 807 F. Supp. 3d 349, 363 (D. Vt. 2025); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116-17 (W.D. Wash. 2019) ("prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process."); *Mashchenko v. Rokosky*, No. 25-cv-12387, 2026 WL 185204, at *3 (D.N.J. Jan. 25, 2026); *Rodriguez Chavez v. Holman*, No. 25-cv-00267, 2026 WL 136902, at *3 (W.D. Pa. Jan. 20, 2026); *Maksin v. Warden, Golden State Annex*, No. 25-cv-00955, 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025).

Absent the availability of § 2241 relief, in circumstances similar to Petitioner's the government could detain a noncitizen for an indeterminate period of time provided there was no final order of removal. This does not conform to the Constitution's guarantee of due process to individuals present in the United States of America. *See Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1220 (W.D. Wash. 2026); *Tenemasa-Lema v. Hyde*, 810 F. Supp. 3d 244, 256 n.18 (D. Mass. Nov. 25, 2025); *Gao v. LaRose*, 805 F. Supp. 3d 1006, 1100 (S.D. Cal. 2025); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825-26 (W.D. Pa. 2025); *Leke v. Hott*, 521 F. Supp. 3d 597, 603 n.8 (E.D. Va. 2021);[3] *Mbalivoto v. Holt*, 527 F. Supp. 3d

---

[3] In support of this conclusion, in *Leke* at footnote 8 the Eastern District of Virginia cites the following cases:

> *See also Kouadio v. Decker*, 352 F. Supp. 3d 235, 241 (S.D.N.Y. 2018) (34-month detention of arriving alien without bond hearing violates due process); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772, No. 3:20-cv-539 (S.D. Cal. 2020) (27-month detention of arriving alien without bond hearing violates due process); *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (23-month detention of arriving alien without bond hearing violates due process); *Mbalivoto v. Holt*, No.1:20-cv-827 at 5 (Dkt. 22) (E.D. Va. Aug. 11, 2020) (22-month detention of arriving alien without bond hearing violates due process); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019) (19-month detention of arriving alien

838, 851 (E.D. Va. 2020) ("[S]ome constitutionally adequate process must be provided; and the Court concludes, based on *Zadvydas*, *Demore*, and *Thuraissigiam*, that Petitioner is not foreclosed from the relief he seeks with respect to his detention either because he is an entering alien, as opposed to an entered alien, or because there remains a discernable statutory purpose for his detention."); *Kydyrali*, 499 F. Supp. 3d at 772; *Abdi v. Duke*, 280 F. Supp. 3d 373, 393 (W.D.N.Y. 2017) ("The majority of the courts in this Circuit that have considered the issue agree, and this Court finds their reasoning ... persuasive. Section 1225(b) does not permit the indefinite detention of individuals detained under that statute."); *Mashchenko*, 2026 WL 185204, at *3; *Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 25-cv-01658, 2026 WL 145644, at *6 (E.D. Cal. Jan. 20, 2026); *Sufiiarov v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-03265, 2026 WL 26079, at *3 (S.D. Cal. Jan. 5, 2026) ("The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process."); *Abdul-Samed*, 2025 WL 2099343, at *6; *Arechiga v. Archambeault*, No. 23-cv-0600, 2023 WL 5207589, at *3 (D. Nev. Aug. 11, 2023); *Bermudez Paiz v. Decker*, No. 18-cv-4759, 2018 WL 6928794, at *10 (S.D.N.Y. Dec. 27, 2018) ("Most judges who have squarely faced the question have applied the same logic to § 1225(b), holding that arriving aliens, like criminal aliens, cannot be detained for an unreasonably prolonged period of time without a bond hearing."). *Contra Petgrave v. Aleman*, 529 F. Supp. 3d 665, 667 (S.D. Tex. 2021); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021); *Mendoza-Linares v. Garland*, No. 21-cv-1169, 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024).

---

without bond hearing violates due process); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442–43 (D. N.J. 2019) (same); *Djelassi v. ICE Field Office Dir.*, 434 F. Supp. 3d 917, 930 (W.D. Wash. 2020) (18-month detention of arriving alien without bond hearing violates due process); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1177 (W.D. Wash. 2019) (17-month detention of arriving alien without bond hearing violates due process); *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (10-month detention of arriving alien without bond hearing violates due process).

However, the Court has previously concluded that an immigration detainee does not have a due process right to be free of prolonged detention pending the conclusion of their removal proceedings. *See Nurbekov v. Rivas*, No. 25-cv-04353, 2026 WL 1295573, at *1 (D. Ariz. May 12, 2026).

The undersigned respectfully disagrees and, accordingly,

**IT IS RECOMMENDED that** the Petition at ECF No. 1 be **granted** and the Court order Petitioner be given a bond hearing before a neutral arbiter within seven (7) days of the date the Court issues its final order.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. Rule 72(b), Federal Rules of Civil Procedure, provides that the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 21st day of August, 2026.



Camille D. Bibles
United States Magistrate Judge